UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

TIMOTHY P.,[1]

                                 Plaintiff,

          v.

COMMISSIONER OF SOCIAL SECURITY,

                                 Defendant.
_____

DECISION & ORDER

19-CV-6792MWP

**PRELIMINARY STATEMENT**

        Plaintiff Timothy P. ("plaintiff") brings this action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying his application for Disability Insurance Benefits ("DIB"). Pursuant to the Standing Order of the United States District Court for the Western District of New York regarding Social Security cases dated June 1, 2018, this case has been reassigned to, and the parties have consented to the disposition of this case by, the undersigned. (Docket # 16).

        Currently before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Docket ## 9, 14). For the reasons set forth below, I hereby vacate the decision of the Commissioner and remand this claim for further administrative proceedings consistent with this decision.

---

[1] Pursuant to the November 18, 2020 Standing Order of the United States District Court for the Western District of New York regarding identification of non-governmental parties in social security opinions, the plaintiff in this matter will be identified and referenced solely by first name and last initial.

**DISCUSSION**

I.  **Standard of Review**

This Court's scope of review is limited to whether the Commissioner's determination is supported by substantial evidence in the record and whether the Commissioner applied the correct legal standards.  *See Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004) ("[i]n reviewing a final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision"), *reh'g granted in part and denied in part*, 416 F.3d 101 (2d Cir. 2005); *see also Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) ("it is not our function to determine *de novo* whether plaintiff is disabled[;] . . . [r]ather, we must determine whether the Commissioner's conclusions are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard") (internal citation and quotation omitted).  Pursuant to 42 U.S.C. § 405(g), a district court reviewing the Commissioner's determination to deny disability benefits is directed to accept the Commissioner's findings of fact unless they are not supported by "substantial evidence."  *See* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive").  Substantial evidence is defined as "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation omitted).

To determine whether substantial evidence exists in the record, the court must consider the record as a whole, examining the evidence submitted by both sides, "because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  To the extent

they are supported by substantial evidence, the Commissioner's findings of fact must be sustained "even where substantial evidence may support the claimant's position and despite the fact that the [c]ourt, had it heard the evidence *de novo*, might have found otherwise." *Matejka v. Barnhart*, 386 F. Supp. 2d 198, 204 (W.D.N.Y. 2005) (citing *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983)).

A person is disabled for the purposes of SSI and disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A). In assessing whether a claimant is disabled, the ALJ must employ a five-step sequential analysis. *See Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982) (*per curiam*). The five steps are:

(1) whether the claimant is currently engaged in substantial gainful activity;

(2) if not, whether the claimant has any "severe impairment" that "significantly limits [the claimant's] physical or mental ability to do basic work activities";

(3) if so, whether any of the claimant's severe impairments meets or equals one of the impairments listed in Appendix 1 of Subpart P of Part 404 of the relevant regulations (the "Listings");

(4) if not, whether despite the claimant's severe impairments, the claimant retains the residual functional capacity [("RFC")] to perform [his or her] past work; and

(5) if not, whether the claimant retains the [RFC] to perform any other work that exists in significant numbers in the national economy.

3

20 C.F.R. §§ 404.1520(a)(4)(i)-(v) & 416.920(a)(4)(i)-(v); *Berry v. Schweiker*, 675 F.2d at 467. "The claimant bears the burden of proving his or her case at steps one through four[;] . . . [a]t step five the burden shifts to the Commissioner to 'show there is other gainful work in the national economy [which] the claimant could perform.'" *Butts v. Barnhart*, 388 F.3d at 383 (quoting *Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998)).

II.     **The ALJ's Decision**

In his decision, the ALJ followed the required five-step analysis for evaluating disability claims. Under step one of the process, the ALJ found that plaintiff had not engaged in substantial gainful activity during the period from May 21, 2010, the alleged onset date, through his date last insured, December 31, 2014 (the "Relevant Period"). (Tr. 23).[2] At step two, the ALJ concluded that plaintiff had the severe impairments of shoulder impairment and obesity. (*Id.*). The ALJ also determined that plaintiff's bipolar disorder was a non-severe impairment. (Tr. 23-24). At step three, the ALJ found that plaintiff did not have an impairment (or combination of impairments) that met or medically equaled one of the listed impairments in the Listings through the date last insured. (Tr. 24-25).

The ALJ then concluded that plaintiff retained the RFC to perform light work, except that he was limited to lifting and/or carrying up to fifteen pounds. (Tr. 25). At step four, the ALJ found that plaintiff was unable to perform his past work. (Tr. 30). At step five, the ALJ determined that other jobs existed in significant numbers in the national economy that, based on his age, education, work experience, and RFC, plaintiff could perform, such as photocopying

---

[2] The administrative transcript (Docket # 7) shall be referred to as "Tr. ___," and references thereto utilize the internal Bates-stamped pagination assigned by the parties.

machine operator, information clerk, and companion. (Tr. 30-31). Accordingly, the ALJ found that plaintiff was not disabled. (Tr. 31-32).

### III. Plaintiff's Contentions

Plaintiff contends that the ALJ's determination that he was not disabled is not supported by substantial evidence and is the product of legal error. (Docket ## 9-1, 15). First, plaintiff maintains that the ALJ failed to fully develop the record regarding plaintiff's mental health treatment. (Docket ## 9-1 at 10-14; 15 at 1-3). Second, plaintiff asserts that the ALJ erroneously weighed the opinions of mental health counselors Scott Grefrath ("Grefrath"), LCSW-R,[3] and Christine Casaceli ("Casaceli"), LCSW-R, both of whom treated plaintiff during the Relevant Period. (Docket ## 9-1 at 14-20; 15 at 3-4). Third, plaintiff argues that the ALJ improperly assigned heightened weight to the July 19, 2018 opinion of psychiatrist Justin van der Meid ("Dr. van der Meid"), MD.[4] (Docket ## 9-1 at 20-22; 15 at 5-6). Finally, plaintiff contends that the ALJ rejected the opinion evidence relating to his physical impairments and improperly reached an RFC determination based upon the ALJ's lay interpretation of the record evidence. (Docket ## 9-1 at 22-26; 15 at 6-7).

### IV. Analysis

#### A. The ALJ Failed to Adequately Develop the Record

Plaintiff first contends that the ALJ failed to fully develop the record, specifically as it pertains to plaintiff's mental health treatment prior to December 31, 2014 – plaintiff's date

---

[3] The ALJ mistakenly referred to Grefrath as "Ms. Grefath." (Tr. 26).

[4] The ALJ mistakenly referred to Dr. van der Meid as "Dr. van der Merd." (Tr. 29).

5

last insured ("DLI").[5]  (Docket ## 9-1 at 10-14; 15 at 1-3).  This argument centers on plaintiff's contention that the ALJ should have attempted to obtain treatment notes from Catholic Family Center, where plaintiff received mental health treatment during the Relevant Period.  In plaintiff's view, the ALJ's duty to develop the record was heightened in this case both because plaintiff was *pro se* at the time of the administrative hearing[6] and because his application for DIB included several mental impairments.  For the reasons explained below, I agree with plaintiff.

"It is well established in the Second Circuit that an ALJ is under an obligation to develop the administrative record fully, to ensure that there are no inconsistencies in the record that require further inquiry, and to obtain the reports of treating physicians and elicit the appropriate testimony during the proceeding."  *Martello v. Astrue*, 2013 WL 1337311, *3 (W.D.N.Y. 2013).  Given the non-adversarial nature of a Social Security hearing, "[t]he duty of the ALJ, unlike that of a judge at trial, is to 'investigate and develop the facts and develop the arguments both for and against the granting of benefits.'"  *Vincent v. Comm'r of Soc. Sec.*, 651 F.3d 299, 305 (2d Cir. 2011) (quoting *Butts*, 388 F.3d at 386).  Accordingly, before determining whether the ALJ's conclusions are supported by substantial evidence, a court must first evaluate whether the claimant was provided a full hearing "in accordance with the beneficent purposes of the [Social Security] Act."  *Echevarria v. Sec'y of Health & Human Servs.*, 685 F.2d 751, 755 (2d Cir. 1982) (citation omitted); *see also Archbald v. Colvin*, 2015 WL 7294555, *3 (E.D.N.Y.

---

[5] "The date last insured ("DLI") is a technical term used by the Commissioner to mark the last day on which a claimant is eligible for DIB."  *Cheri Lee H. v Comm'r of Soc. Sec.*, 2020 WL 109007, *4 n.4 (N.D.N.Y. 2020).  To be eligible for DIB, a claimant must establish that he or she was under a disabling condition at some point between the alleged onset date and the DLI.  *See, e.g.*, *Haskins v. Astrue*, 2010 WL 3338742, *4 (N.D.N.Y.), *report and recommendation adopted by*, 2010 WL 3338748 (N.D.N.Y. 2010).  Here, as the ALJ determined, the Relevant Period for purposes of plaintiff's DIB claim is May 21, 2010 through December 31, 2014.  (Tr. 31).

[6] Plaintiff waived his right to counsel at the administrative hearing.  (*See* Tr. 21, 42-45).

6

2015) ("[t]he reviewing court must ensure that 'all of the relevant facts [are] sufficiently developed and considered'") (quoting *Hankerson v. Harris*, 636 F.2d 893, 895 (2d Cir. 1980)).

Moreover, "[t]he ALJ's duty to develop the record is enhanced when the disability in question is a psychiatric impairment." *Ramos v. Colvin*, 2015 WL 925965, *9 (W.D.N.Y. 2015) (quotations omitted). In addition, "[w]hen a claimant properly waives his right to counsel and proceeds *pro se*, the ALJ's duties are [also] 'heightened.'" *Moran v. Astrue*, 569 F.3d 108, 113 (2d Cir. 2009) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). When a claimant proceeds *pro se*, "[t]he ALJ must adequately protect [the] *pro se* claimant's rights by ensuring that all of the relevant facts are sufficiently developed and considered and by scrupulously and conscientiously probing into, inquiring of, and exploring for all the relevant facts." *Id.* at 113 (alterations and quotations omitted) (citing *Cruz v. Sullivan*, 912 F.2d at 11). The ALJ's duty to develop the record is not, however, without limits; specifically, "where there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999) (quotations omitted).

No dispute exists here that plaintiff appeared *pro se* at the administrative hearing (Tr. 21) or that his DIB application included alleged mental health impairments, such as bipolar disorder, anxiety, and ADHD (Tr. 244). At the administrative hearing, plaintiff also stated that he had been diagnosed with multiple personality disorder (Tr. 51), which was also noted in the Grefrath and Casaceli evaluations completed during the Relevant Period (*see* Tr. 1202, 1212) that are discussed more fully *infra*. On this record, the ALJ had a "heightened" or "enhanced"

duty to develop the record. *See Moran v. Astrue*, 569 F.3d at 113; *Ramos v. Colvin*, 2015 WL 925965 at *9.

Because plaintiff applied for DIB, the Relevant Period takes on greater significance (*see supra* at n.5), which the ALJ clearly appreciated. For instance, shortly after the June 1, 2018 administrative hearing concluded, the ALJ reopened the hearing to explain to plaintiff that he "remembered after [plaintiff] left [the hearing] that [there was] a problem in [plaintiff's] case." (Tr. 83). The ALJ clarified that to be awarded DIB, plaintiff "would have to prove that [he] w[as] disabled prior to December 31, 2014, four years ago." (*Id.*). The apparent "problem," as the ALJ told plaintiff, was that "frankly, looking at the records, [the ALJ] d[id] [not] have records of a disability before 2014." (*Id.*). According to the ALJ, "getting records from [plaintiff's] doctors about how [plaintiff was] doing now d[id] [not] matter" (Tr. 85), presumably because those records likely would not assess plaintiff's condition prior to the DLI. Despite recognizing this "problem," the ALJ did not question plaintiff about treatment he received during the Relevant Period. Instead, the ALJ urged plaintiff to file an application for supplemental security income ("SSI") and explained that the ALJ's DIB decision "[was] going back to 2014" (Tr. 84) and plaintiff's "chances [of receiving DIB] [were] not good" (Tr. 85).[7] There is no indication that plaintiff subsequently filed an application for SSI.

---

[7] That plaintiff's DLI expired several years prior to the ALJ's decision did not "absolve the ALJ of his duty to attempt to obtain a fully developed record for the time period at issue." *Haskins v. Astrue*, 2010 WL 3338742 at *6; *see also* 20 C.F.R. § 404.1512(b)(1) ("[b]efore [the Commissioner] make[s] a determination that [claimant] [is] not disabled, [the Commissioner] will develop [claimant's] complete medical history for at least the 12 months preceding the month in which [claimant] file[d] [his or her] application *unless there is reason to believe that development of an earlier period is necessary*") (emphasis supplied). Here, the ALJ had reason to believe that development of the record from an earlier period, i.e., the Relevant Period, was necessary; in fact, it was the ALJ who identified the lack of documentation regarding a disabling impairment during the Relevant Period as a "problem" at plaintiff's hearing. Moreover, as explained *infra*, the ALJ had notice prior to rendering his decision that records relevant to plaintiff's mental health impairments during the Relevant Period existed and were not included in the record.

After the administrative hearing, the ALJ left the record open to obtain additional medical evidence identified during the hearing. (Tr. 53-54, 81). The ALJ ultimately received records dated from November 2010 through March 2018 relating to plaintiff's applications for public assistance through the Monroe County Department of Human Services ("MCDHS") (Tr. 1184-213), as well as a July 19, 2018 mental medical source statement completed by Dr. van der Meid, a psychiatrist at Strong Ties, where plaintiff received mental health treatment. (Tr. 54, 1215-17). Dr. van der Meid's opinion assessed plaintiff's functional capacity at the time he completed the opinion; in other words, it did not purport to be a retrospective opinion of plaintiff's mental condition prior to the DLI. (Tr. 1216).

The MCDHS records, on the other hand, consisted of several opinions from mental health providers who treated plaintiff at Catholic Family Center during the Relevant Period. Specifically, the ALJ received a November 8, 2010 "Psychological Assessment for Determination of Employability" for MCDHS completed by Grefrath, who treated plaintiff at Catholic Family Center. (Tr. 1210-13). Grefrath noted that plaintiff first began mental health treatment at Catholic Family Center on April 20, 2010 (just prior to the Relevant Period), but that plaintiff had missed appointments from May 7, 2010 through July 22, 2010, and from July 30, 2010 through September 28, 2010. (Tr. 1210-11). In Grefrath's view, plaintiff's absence from those scheduled appointments explained his lack of improvement during his treatment. (Tr. 1211). Grefrath indicated that he had evaluated plaintiff five times over the prior twelve months, including on October 12, 2010, as well as his most recent appointment on October 24, 2010. (Tr. 1210-11). According to Grefrath, plaintiff had an appointment scheduled for November 9, 2010. (Tr. 1211).

At the time Grefrath completed the assessment, plaintiff's chief complaints included "severe, well-documented ADHD [and] anxiety," as well as depressed mood. (Tr. 1210). Plaintiff reported a prior history with ADHD and bipolar disorder as a child. (*Id.*). He also reported "memory lapses," but that medical tests and neurological and psychiatric consultations revealed "nothing." (Tr. 1211).

Grefrath diagnosed plaintiff with ADHD combined type, bipolar I disorder, cannabis dependence, personality disorder with cluster B traits, rule out malingering, and rule out anxiety. (Tr. 1212). Grefrath opined that these diagnoses caused plaintiff to be "moderately limited" (meaning an inability to function 10-25% of the time) in his ability to maintain attention and concentration for role tasks and in his capacity to regularly attend to a routine and maintain a schedule. (*Id.*). He further opined that plaintiff could follow, understand, and remember simple instructions and directions, perform simple and complex tasks independently, maintain basic standards of hygiene and grooming, and perform low-stress and simple tasks without limitation. (*Id.*). Plaintiff also demonstrated the capacity to use public transportation and had his own vehicle. (*Id.*). Moreover, Grefrath opined that plaintiff could engage in activities such as work, education, or training, for twenty hours per week with reasonable accommodations, that these limitations were expected to last for six months, and that plaintiff "[s]hould be able to find employment scheduled opposite of his treatment programs." (Tr. 1212-13).

The ALJ also received another "Psychological Assessment for Determination of Employability" for MCDHS, which was completed on September 4, 2012 by Casaceli, a social worker who also treated plaintiff at Catholic Family Center. (Tr. 1200-203). On the form, Casaceli indicated that she had evaluated plaintiff over ten times in the prior twelve months. (Tr. 1200). Plaintiff's chief complaints remained ADHD, anxiety, and memory loss. (*Id.*).

10

Casaceli noted that plaintiff's treatment at Catholic Family Center had improved his condition. (Tr. 1201).

Casaceli diagnosed plaintiff with bipolar disorder, ADHD, personality disorder, and cannabis dependence. (Tr. 1202). These diagnoses, Casaceli opined, would cause plaintiff to be "moderately limited" in several functional areas, namely, the capacity to follow, understand, and remember simple instructions and directions; perform simple and complex tasks independently; maintain attention and concentration for role tasks; regularly attend to a routine and maintain a schedule; maintain basic standards of hygiene and grooming; and perform low-stress and simple tasks. (*Id.*). Casaceli also opined that plaintiff demonstrated the ability to participate in activities like work, education, and training for less than twenty hours per week, with his limitations expected to last for six to twelve months. (*Id.*).

The ALJ also received a third "Psychological Assessment for Determination of Employability" for MCDHS, completed on February 8, 2011 by a mental health counselor from Catholic Family Center whose name appears to be Shannon Turner. (Tr. 1208-209). Based on the two pages of the apparently incomplete opinion that are in the record, this third mental health counselor treated plaintiff at least in January and February 2011 and apparently evaluated plaintiff as many as six times over that period. (Tr. 1208). The counselor noted that, as of February 8, 2011, plaintiff presented with "moderate-to-severe levels of anxiety" because of stress and plaintiff's anxiety manifested itself through a racing heart, distressing thoughts, and disorientation. (*Id.*).

These opinions underscore the significance of plaintiff's treatment at Catholic Family Center during the Relevant Period. They indicate that plaintiff was treated by providers at Catholic Family Center more than *twenty* times at the very least from April 2010 through

11

September 2012 – the great majority of which took place during the Relevant Period.  Moreover, the record suggests that plaintiff continued to receive treatment at Catholic Family Center through November 2015.  (*See* Tr. 940 (plaintiff presenting to the emergency department at Strong Memorial Hospital on November 6, 2015 due to anxiety issues and indicating that he was receiving mental health treatment from Casaceli at Catholic Family Center)).  In other words, the record suggests that plaintiff was treated for mental health impairments throughout the entirety of the Relevant Period.  Given the significance of the Relevant Period to plaintiff's DIB claim, these records from Catholic Family Center likely would be "central to the disability determination."  *See Carr v. Comm'r of Soc. Sec.*, 2017 WL 1957044, *10 (S.D.N.Y. 2017) (an ALJ has an "affirmative duty to develop the record that is independent of the plaintiffs' duty to provide evidence . . . [,] especially . . . where . . . the records are central to the disability determination") (quotations omitted) (collecting cases), *report and recommendation adopted by*, 2018 WL 3410012 (S.D.N.Y. 2018).

    The record does not, however, contain *any* treatment notes from plaintiff's extensive treatment at Catholic Family Center.  In fact, aside from the opinions of Grefrath and Casaceli, and the partial third opinion from another counselor at Catholic Family Center, the record does not contain any detailed evidence of plaintiff's mental health condition or treatment during the Relevant Period.  Instead, almost the entirety of the over 1200-page administrative transcript post-dates the plaintiff's DLI and the Relevant Period, which the ALJ acknowledged.  (*See* Tr. 28 (noting that the record contained treatment notes from Strong Ties, but that they were from "a period *after* the date last insured") (emphasis in original); Tr. 29 (acknowledging that psychologist Dr. Adam Brownfield "provided [his] assessment well past the time at issue in the claim, that is, before the date last insured"); Tr. 29 (stating that Dr. van der Meid "provided [his

medical source statement] after the date last insured had long expired")). Nor does the record contain any indication that the ALJ took steps to contact providers at Catholic Family Center. *See*, *e.g.*, *Kimberly R. v. Berryhill*, 2019 WL 356547, *7 (N.D.N.Y. 2019) ("[t]hus, even though [p]laintiff apparently saw [treating source] every six months during the relevant time period, the record contains no such evidence[;] [n]or is there any indication that a reasonable effort was made to obtain it, such as a follow-up contact with [treating source][;] [t]he ALJ's decision points out that [treating source] 'did not provide any medical records including objective clinical or diagnostic findings or treatment evidence regarding impairments during the relevant time period'[;] [b]ut the absence of such evidence constitutes an obvious gap in the administrative record") (alterations, citation, and footnote omitted); *Haskins*, 2010 WL 3338742 at *5 ("[h]ere, the ALJ failed in his duty to fully develop the record[;] [a]s acknowledged by the ALJ at [p]laintiff's first hearing, the records before [the date last insured] 'are very skimpy'[;] [h]owever, despite the 'skimpy' record prior to [p]laintiff's DLI, the ALJ failed to avail himself of the several avenues available to him in an attempt to obtain the necessary medical evidence").

    The absence of treatment notes from Catholic Family Center represents a significant deficiency in the record that the ALJ, in light of plaintiff's *pro se* status at the administrative hearing and the nature of his alleged impairments, had a heightened duty to address.  The ALJ's failure to attempt to further develop the record in this regard constitutes error.  *See*, *e.g.*, *Smoker v. Saul*, 2020 WL 2212404, *16-17 (S.D.N.Y. 2020) (record was "incomplete" where it lacked treatment notes from plaintiff's treating mental health therapist; "[p]articularly where treating therapists play a substantial role in the mental health treatment of a claimant, the medical record must contain their treatment notes in order to be considered complete") (collecting cases); *Kimberly R. v. Berryhill*, 2019 WL 356547 at *7 (remand

warranted based upon the absence of treatment notes from plaintiff's treating physician assistant; "[a]lthough [treating source] is not a physician, his treatment notes are nonetheless probative as to [p]laintiff's condition and limitations during the relevant time period[;] [a]nd yet the record does not contain any treatment notes from [treating source] during the relevant time period whatsoever[;] . . . [a]t a minimum, the ALJ should re-contact [treating source] regarding [p]laintiff during the relevant time period"); *Rodriguez o/b/o A.L.R. v. Comm'r of Soc. Sec.*, 2018 WL 3237732, *3 (W.D.N.Y. 2018) (ALJ failed to adequately develop the record by not obtaining treatment notes from claimant's mental health provider who evaluated claimant's mental health impairments).

Moreover, I cannot conclude that the ALJ's failure to attempt to obtain records from Catholic Family Center constitutes harmless error. Although the ALJ discussed the opinions of Grefrath and Casaceli in his decision and purported to assign them weight (Tr. 26-27), the ALJ essentially rejected any claim that plaintiff suffered from a mental health impairment. Specifically, even though plaintiff alleged that he suffered from multiple mental health impairments, many of which were diagnoses noted by Grefrath and Casaceli, the ALJ found none to be severe impairments and only one – plaintiff's bipolar disorder – to be a non-severe impairment. (Tr. 23-24). The ALJ's RFC determination also included no explicit mental limitations. (Tr. 25).

In addition, in evaluating Grefrath's and Casaceli's opinions, the ALJ compared them to the "longitudinal" record evidence. (Tr. 26-27). Yet, as discussed above, the record overwhelmingly consisted of evidence post-dating plaintiff's DLI. Contemporaneous treatment records from Catholic Family Center, on the other hand, might have provided valuable insight

14

into plaintiff's mental health condition during the Relevant Period, as well as a more appropriate context within which to have weighed the opinion evidence.

As the Commissioner points out (Docket # 14-1 at 12-15), plaintiff did not mention his treatment at Catholic Family Center in his DIB application or at the administrative hearing. That oversight, however, does not excuse the ALJ's failure to develop the record by attempting to obtain the mental health treatment records. Plaintiff's treatment at Catholic Family Center during the Relevant Period and the existence of treatment records from its providers should have been evident to the ALJ from a review of the record despite plaintiff's apparent oversight in not explicitly disclosing that treatment.

For example, plaintiff's primary care physician during the Relevant Period, Christopher Taggart, MD, noted on August 28, 2013 that plaintiff "continue[d]" to receive psychotherapy treatment "primarily through" Catholic Family Center for his bipolar disorder and anxiety. (Tr. 393, 395). In addition, the record reflects that eighty-three pages of treatment records from Catholic Family Center, dated April 20, 2010 to September 18, 2010, were considered in plaintiff's prior application for DIB. (Tr. 110). The ALJ had notice of plaintiff's prior application for DIB, as the decision denying that application is included in the record (Tr. 95-110), and is explicitly referenced as an exhibit considered by the ALJ in plaintiff's pending claim (Tr. 33). This alone refutes the Commissioner's speculation that treatment records from Catholic Family Center during the Relevant Period might not exist (Docket # 14-1 at 15); as the prior DIB application reveals, at least some exist.

In short, based on the unique facts of this case – including plaintiff's *pro se* status and the nature of his impairments, the fact that the ALJ highlighted as a "problem" the lack of evidence from the Relevant Period, but failed to ask plaintiff any related follow-up questions at

15

the administrative hearing, and the substantial amount of treatment plaintiff received from Catholic Family Center during the Relevant Period – I find that the ALJ erred by not attempting to obtain treatment records from Catholic Family Center. Remand is warranted for further development of the record.

### B. Plaintiff's Remaining Contentions

In light of my determination that remand is warranted for further development of the record, and because plaintiff's other challenges to the ALJ's decision "may be impacted by the subsequent proceedings," I decline to address plaintiff's remaining contentions. *See*, *e.g.*, *Smoker v. Saul*, 2020 WL 2212404 at *16 ("[t]he failure to develop the record is a threshold issue[] because the [c]ourt cannot rule on whether the ALJ's decision regarding the claimant's functional capacity was supported by substantial evidence if the determination was based on an incomplete record") (alterations and quotations omitted); *Rookey v. Comm'r of Soc. Sec.*, 2015 WL 5709216, *4 (N.D.N.Y. 2015) ("[b]ecause [plaintiff's] remaining contentions . . . may be impacted by the subsequent proceedings directed by this [o]rder, it would be improper for the court to consider them at this juncture"); *Haskins*, 2010 WL 3338742 at *7 (declining to reach other challenges to the ALJ's disability determination where further development of the record was necessary; "[b]ecause of the inadequacies of the current record, the RFC is necessarily flawed").

## CONCLUSION

For the reasons stated above, the Commissioner's motion for judgment on the pleadings **(Docket # 14)** is **DENIED**, and plaintiff's motion for judgment on the pleadings **(Docket # 9)** is **GRANTED** to the extent that the Commissioner's decision is reversed, and this

case is remanded to the Commissioner pursuant to 42 U.S.C. § 405(g), sentence four, for further administrative proceedings consistent with this decision.

**IT IS SO ORDERED.**

                                              *s/Marian W. Payson*
                                              MARIAN W. PAYSON
                                          United States Magistrate Judge

Dated:  Rochester, New York
          March 26, 2021